This case illustrates the problems with hernia claims, which is why the North Carolina legislature, as well as those of most states, enacted a specific provision for hernia claims. See N.C.G.S. § 97-2(18). Because hernias have been recognized as a common injury that could occur at work or elsewhere, the legislature has enacted a four point test for determining whether a hernia is compensable. In particular, Section97-2(18) of the North Carolina Workers' Compensation Act requires the injured employee to prove"
 1. That there was an injury resulting in hernia or rupture;
2. That the hernia or rupture appeared suddenly;
 3. That the hernia or rupture immediately followed an accident; Provided, however, a hernia shall be compensable if it arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assignment; and,
 4. That the hernia or rupture did not exist prior to the accident for which compensation is claimed.
N.C.G.S. § 97-2(18). Acknowledging the intent of the "hernia" provision of the Act, and with specific acknowledgement to the four requirements set forth above, I am compelled to agree with the Deputy Commissioner and dissent from the majority opinion in this case. The evidence, without doubt, fails to establish the four elements necessary for a compensable hernia claim.
The majority in Finding of Fact 7 is correct in noting that Dr. Hoidal and Dr. Alvarez did not find a hernia when they examined the plaintiff. The alleged date of injury is January 25, 1999, and the examinations with Dr. Hoidal and Dr. Alvarez were in January and February 1999. This evidence is contrary to the second and third elements of a hernia claim.See N.C.G.S. § 97-6(18)(b)(d).
Further, Dr. Levine performed an endoscopy on February 6, 1999. An endoscopy is a procedure where a physician places a scope from the rectum into the large intestine. There is no report that a hernia was observed in the pre-endoscopy examination or that the examination was difficult because a portion of the intestine had herniated. Thus the endoscopy study further questions whether the hernia, first discovered on April 27, 1999, occurred suddenly and immediately followed a fall three months prior.
Dr. Carter, the treating surgeon, testified that the history given by plaintiff for the January 25, 1999, incident was "not a normal way to develop a hernia." [Depo. p. 12] He associated the hernia with the January 25, 1999, fall because plaintiff stated that the pain started at that time. [Depo. p. 12] Dr. Carter explained that most hernias are from strenuous activity (lifting), but that the fall could have caused a hernia. [Depo. p. 13] The fact that Dr. Alvarez did not find a hernia was consistent with plaintiff developing the hernia sometime after the fall and after he was examined by Dr. Alvarez. [Depo. p. 17] Dr. Carter's testimony does not establish that the hernia appeared suddenly and immediately after the injury.
Similarly, Dr. Hoidal testified that he did not find the right inguinal hernia when he examined plaintiff on January 28, 1999, for right testicular pain. [Depo. p. 8] In addition, Dr. Alvarez did not note a hernia in his examinations. When confronted with Dr. Carter's office and operative notes, Dr. Hoidal explains what may be a critical fact in this case:
 "We did not appreciate a hernia on the visit in which I was involved in the care of the patient. But in reading Dr. Carter's note, as an experienced general surgeon, to indicate that it was `a very small right inguinal hernia' [sic] on his physical exam followed by an operative report that indicates some weakness of the floor, but the floor did not have an obvious hernia in it, I guess that doesn't surprise me."
[Depo. p. 11] Thus, the medical record does not establish that plaintiff suddenly and immediately presented with a hernia or rupture. Even when Dr. Carter performed the surgery, plaintiff had a "weakness of the floor" without an "obvious hernia."
The evidence further does not support a finding that this condition resulted from the January 25, 1999, fall at work. The majority, in attempting to find that plaintiff was disabled from the January 25, 1999, incident ignores plaintiff's testimony at page 23 of the Transcript wherein plaintiff states that he returned to work after seeing Dr. Alvarez and worked for three days, until February 11, 1999, when plaintiff lifted a bundle of studs and felt a pull in his groin. This incident, occurring after the examinations by Dr. Hoidal and Dr. Alvarez and before the examination by Dr. Carter, based on the testimony of Dr. Carter appears to be the more likely origin of plaintiff's inguinal "floor" problem.
The majority has failed to evaluate this claim in the context of the specific hernia provisions of Section 97-2(18). The majority's finding that the hernia was small and the inference that it might have increased or otherwise was reasonably not observed by Dr. Hoidal and Dr. Alvarez is contrary to the direct requirements of Section 97-2(18) that the hernia "appear" suddenly. N.C.G.S. § 97-2(18)(b). The Act requires that the hernia be observable shortly after the alleged injury event. Therefore, I respectfully dissent from the finding that plaintiff has sustained a compensable hernia on January 25, 1999[Note 1], and the resulting findings that plaintiff sustained disability from February 12, 1999[Note 2] through September 14, 1999, and that defendants are responsible for the medical treatment for the hernia.
I concur with the majority opinion that plaintiff sustained a compensable injury to his scrotum, including an injury to his testicle, and that the rectal bleeding was not related to the January 25, 1999, event. Consistent with the Deputy Commissioner's decision, the evidence in this case is that the scrotal injury did not produce disability.
Signed this ___ day of January, 2002.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 NOTES
1. The question whether plaintiff has a compensable injury from February 11, 1999, is not before us in this claim.
2. I further note that the majority opinion grants disability from February 12, 1999, which is the date that plaintiff left work. There is, however, no competent evidence that plaintiff was found to be disabled by any health care provider, or that he was taken off from work, prior to the surgery for his hernia which occurred on May 25, 1999.